UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

---

RENÉ AVILA and NANCY AVILA, )
)
Plaintiffs, )
)
v. ) Civil Action No. 13-1786 (RBW)
)
CITIMORTGAGE, INC., et al. )
)
Defendants. )

---

**MEMORANDUM OPINION**

Pro se plaintiffs René Avila and Nancy Avila bring this civil action against several defendants,[1] and appear to be alleging that the attempted foreclosure on their home violates one of the consent decrees issued in United States v. Bank of America, Civ. No. 12-361 (D.D.C., filed Mar. 12, 2012), see Complaint ("Compl.") ¶ 1(A)-(E), as well as the Fair Debt Collection Practices Act, 15 U.S.C. §§ 1692-1692p (2012), the Rosenthal Fair Debt Collection Practices Act ("Rosenthal Act"), Cal. Civ. Code §§ 1788-1788.33 (2001), and 42 U.S.C. §§ 1983, 1985, 1986 (2012), see id. ¶¶ 57-91. The plaintiffs additionally allege that the defendants committed fraud, deprived them of their due process rights under the United States and California constitutions, and subjected them to emotional distress. See id. ¶¶ 57-91. They seek injunctive relief, id. at 34:20-21, as well as "equitable relief, statutory damages, actual damages, reasonable attorney's fees, and costs," id. ¶ 91. Currently before the Court are Priority Posting and Publishing, Inc.'s Motion to Dismiss ("Priority's Mot."); Defendant CitiMortgage, Inc.'s Motion to Dismiss ("Citi

---

[1] The defendants are CitiMortgage, Inc.; CitiFinancial Mortgage Company, LLC; Quality Loan Service Corp.; Priority Posting and Publishing, Inc.; Pite Duncan, LLP; McCarthy & Holthus, LLP; Christopher L. Peterson, Esq.; Ashley B. Hennessee, Esq.; and John Does 1-10, all of which were somehow allegedly involved with or related to proceedings surrounding the plaintiffs' mortgage for, and/or foreclosure or attempted foreclosure on, the plaintiffs' home. See Compl. ¶¶ 32-38.

1

Inc.'s Mot."); Defendants McCarthy & Holthus, LLP, Ashley B. Hennessee and Quality Loan Service Corp.'s Motion to Dismiss ("McCarthy's Mot."); Defendant Christopher L. Peterson, Esq.'s Motion to Dismiss for Lack of Personal Jurisdiction ("Peterson's Mot."); and Defendant CitiFinancial Mortgage Company, LLC's Motion to Dismiss ("Citi LLC's Mot."), all of which seek dismissal of the plaintiffs' complaint under various provisions of Federal Rule of Civil Procedure 12.[2]  Upon careful consideration of the parties' submissions,[3] and for the reasons stated below, the Court grants the defendants' motions.

---

[2] Two additional motions are also before the Court: (1) Defendants Quality Loan Service, McCarthy & Holthus and Ashley B. Hennessee's Motion to Extend Time, which is unopposed, and (2) Defendant Christopher L. Peterson, Esq.'s Request for Judicial Notice in Support of Motion to Dismiss for Lack of Personal Jurisdiction.

Because defendants Quality Loan Service, McCarthy & Holthus and Ashley B. Hennessee demonstrated good cause for their requested extension of time to file their motion to dismiss, see ECF No. 4 at 2, and because neither the other defendants nor the plaintiffs oppose the motion, the Court will grant the motion nunc pro tunc to January 17, 2014. Defendants Quality Loan Service, McCarthy & Holthus and Ashley B. Hennessee's motion to dismiss the plaintiffs' complaint, see generally McCarthy Mot., is therefore deemed timely filed.

As to defendant Peterson's motion for judicial notice, see ECF No. 9, the Court denies the motion as moot in light of its finding that venue in the District of Columbia is improper, as explained more fully below.

[3] In addition to the filings already mentioned, the Court considered the following submissions by the parties in rendering its decision: (1) the Memorandum in Support of Priority Posting and Publishing, Inc.'s Motion to Dismiss ("Priority's Mem."); (2) the Memorandum of Points and Authorities in Support of Defendant CitiMortgage, Inc.'s Motion to Dismiss ("Citi Inc.'s Mem."); (3) the Memorandum of Points and Authorities in Support of Defendants McCarthy & Holthus, LLP, Ashley B. Hennessee, Esquire and Quality Loan Service Corp.'s Motion to Dismiss ("McCarthy's Mem."); (4) Christopher L. Peterson, Esq.'s Memorandum in Support of Defendant's Motion to Dismiss for Lack of Personal Jurisdiction ("Peterson's Mem."); (5) the Memorandum of Points and Authorities in Support of Defendant CitiFinancial Mortgage Company, LLC's Motion to Dismiss ("Citi LLC's Mem."); (6) the Plaintiffs' Answer and Opposition to Defendant Priority Posting and Publishing, Inc.'s Motion to Dismiss, ECF No. 15 ("Pls.' Priority Opp'n"); (7) the Reply Memorandum in Further Support of Priority Posting and Publishing, Inc.'s Motion to Dismiss ("Priority's Reply"); (8) the Plaintiffs' Answer and Opposition to Defendant Priority Posting and Publishing, Inc.'s Motion to Dismiss, ECF No. 17; (9) the Plaintiffs' Opposition and Answer to Defendants' Motion to Dismiss, ECF No. 18 ("Pls.' Combined Opp'n"); and (10) the Defendants' Reply to Plaintiffs' Opposition to Motions to Dismiss ("Defs.' Combined Reply").

The plaintiffs filed two oppositions to defendant Priority Posting and Publishing, Inc.'s Motion to Dismiss.  See ECF Nos. 15, 17.  The Court's review of the submissions reveals that the two documents are identical, with the exception of the certificate of service.  Accordingly, the Court refers only to ECF No. 15, as abbreviated above, i.e., Pls.' Priority Opp'n, when citing the plaintiffs' opposition.

I. BACKGROUND

Although the plaintiffs' complaint is lengthy and often incoherent, the Court distilled the following facts from it.

The plaintiffs are the owners of the property located at 10055 Sycamore Canyon Road, Moreno Valley, California 92557. Compl., Exhibit ("Ex.") 2 (Deed of Trust) at 3. Defendant CitiFinancial Mortgage Company, LLC was the original named beneficiary of the mortgage agreement for the plaintiffs' home. Id. at 1. CitiFinancial Mortgage Company, LLC "irrevocably grant[ed] and convey[ed]" to a trustee the power to sell the property in the event the plaintiffs defaulted on their mortgage. Id. at 2, 10-11. The mortgage further specified that CitiFinancial Mortgage Company, LLC "at its option, may from time to time appoint a successor trustee to any Trustee appointed" under the mortgage. Id. at 11.

On June 25, 2010, defendant CitiMortgage, Inc. became the beneficiary of the plaintiffs' mortgage as a result of a merger. Compl., Ex. 3 (Assignment of Deed of Trust) at 1. Shortly thereafter, CitiMortgage, Inc. exercised its option to appoint defendant Quality Loan Service Corporation as the new trustee of the plaintiffs' mortgage. Compl., Ex. 10 (Substitution of Trustee) at 1.

In a notice dated April 24, 2012, Quality Loan Service Corporation informed the plaintiffs that they had failed to pay their mortgage "installments of principal and interest which became due on [December 1, 2011], and all subsequent installments of principal and interest through" April 24, 2012. Compl., Ex. 13 (Notice of Default and Election to Sell Under Deed of Trust ("Notice of Default")) at 2-3. The notice further stated that the plaintiffs' property would be sold at a foreclosure sale unless they paid the outstanding installments due on their mortgage. Id. at 1. A subsequent notice, dated June 26, 2013 informed the plaintiffs that they were "in

default under [their] deed of trust" and a foreclosure sale was set for July 24, 2013, at 9:00 a.m. Compl., Ex. 14 (Notice of Trustee's Sale) at 1. While the complaint suggests that a foreclosure sale took place, see, e.g., Compl. ¶ 85, it does not definitively indicate that the sale took place or when it occurred. However, the plaintiffs indicated in a subsequent filing that their "home has not been sold" and that "no foreclosure sale was effectuated." Pls.' Priority Opp'n at 2.

As noted above, the plaintiffs appear to be alleging in this lawsuit that the attempted foreclosure on their home violates a consent decree issued in United States v. Bank of America, Civ. No. 12-361 (D.D.C., filed Mar. 12, 2012), see Compl. ¶ 1(A)-(E), as well as the Fair Debt Collection Practices Act, the Rosenthal Act, 42 U.S.C. §§ 1983, 1985, 1986, and various due process provisions of the United States and California State Constitutions, see id. ¶¶ 57-91. The plaintiffs further allege that the defendants committed fraud and have intentionally subjected them to emotional distress. Id. In asserting their allegations, the plaintiffs challenge the validity of various legal instruments and notices cited above. See id. ¶¶ 3-9, 13-19.

The defendants have filed motions to dismiss the plaintiffs' complaint under several provisions of Federal Rule of Civil Procedure 12. See Priority's Mot. at 1 (Rules 12(b)(1), 12(b)(2), 12(b)(3), and 12(b)(6)); Citi Inc.'s Mot. at 1 (Rules 12(b)(3) and 12(b)(6)); McCarthy's Mot. at 1 (Rules 12(b)(3) and 12(b)(6)); Peterson's Mot. at 1 (Rule 12(b)(6)); Citi LLC's Mot. at 1 (Rules 12(b)(3) and 12(b)(6)). The plaintiffs oppose all of the motions.

## II. STANDARDS OF REVIEW

### A. Consideration of Pro Se Pleadings

The pleadings of pro se parties are to be "liberally construed, and a pro se complaint, however inartfully pleaded, must be held to less stringent standards than formal pleadings drafted by lawyers." Erickson v. Pardus, 551 U.S. 89, 94 (2007) (per curiam) (internal citations and

quotation marks omitted).  However, even though a pro se complaint must be construed liberally, the complaint must still "present a claim on which the Court can grant relief." Chandler v. Roche, 215 F. Supp. 2d 166, 168 (D.D.C. 2002) (citing Crisafi v. Holland, 655 F.2d 1305, 1308 (D.C. Cir. 1981)).

### B. Rule 12(b)(1) Motion to Dismiss

When a defendant moves for dismissal under Federal Rule of Civil Procedure 12(b)(1), "the plaintiffs bear the burden of proving by a preponderance of the evidence that the Court has subject matter jurisdiction." Biton v. Palestinian Interim Self–Gov't Auth., 310 F. Supp. 2d 172, 176 (D.D.C. 2004); see Lujan v. Defenders of Wildlife, 504 U.S. 555, 561 (1992).  A court considering a Rule 12(b)(1) motion must "assume the truth of all material factual allegations in the complaint and 'construe the complaint liberally, granting [the] plaintiff[s] the benefit of all inferences that can be derived from the facts alleged.'" Am. Nat'l Ins. Co. v. FDIC, 642 F.3d 1137, 1139 (D.C. Cir. 2011) (quoting Thomas v. Principi, 394 F.3d 970, 972 (D.C. Cir. 2005)). However, "the district court may consider materials outside the pleadings in deciding whether to grant a motion to dismiss for lack of jurisdiction." Jerome Stevens Pharm., Inc. v. FDA, 402 F.3d 1249, 1253 (D.C. Cir. 2005) (citing Herbert v. Nat'l Acad. of Scis., 974 F.2d 192, 197 (D.C. Cir. 1992)).

### C. Rule 12(b)(3) Motion to Dismiss

In considering a motion to dismiss for lack of proper venue under Rule 12(b)(3), "the Court accepts the plaintiff[s'] well-pled factual allegations regarding venue as true, draws all reasonable inferences from those allegations in the plaintiff[s'] favor, and . . . resolves any factual conflicts in the plaintiff[s'] favor." Quarles v. Gen. Inv. & Dev. Co., 260 F. Supp. 2d 1, 8 (D.D.C. 2003) (internal quotation marks and citation omitted); see also 2215 Fifth St. Assocs. v.

5

U-Haul Int'l, Inc., 148 F. Supp. 2d 50, 54 (D.D.C. 2001) (stating that courts will grant a 12(b)(3) motion if "facts [are] presented that . . . defeat [the] plaintiff[s'] assertion of venue") (citation omitted). "Because it is the plaintiff[s'] obligation to institute the action in a permissible forum, the plaintiff[s] usually bear[] the burden of establishing that venue is proper." Freeman v. Fallin, 254 F. Supp. 2d 52, 56 (D.D.C. 2003) (citations omitted).

### D. Rule 12(b)(6) Motion to Dismiss

A Federal Rule of Civil Procedure 12(b)(6) motion tests whether the complaint "state[s] a claim upon which relief can be granted." Fed. R. Civ. P. 12(b)(6). "To survive a motion to dismiss [under Rule 12(b)(6)], a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009) (quoting Bell Atl. Corp. v. Twombly, 550 U.S. 544, 570 (2007)). A claim is facially plausible "when the plaintiff[s] plead[] factual content that allows the court to draw [a] reasonable inference that the defendant[s] [are] liable for the misconduct alleged." Id. (citing Twombly, 550 U.S. at 556). While the Court must "assume [the] veracity" of any "well-pleaded factual allegations" in the complaint, conclusory allegations "are not entitled to the assumption of truth." Id. at 679.

"'In determining whether a complaint states a claim, the court may consider the facts alleged in the complaint, documents attached thereto or incorporated therein, and matters of which it may take judicial notice.'" Abhe & Svoboda, Inc. v. Chao, 508 F.3d 1052, 1059 (D.C. Cir. 2007) (citation omitted). And among the documents "subject to judicial notice on a motion to dismiss" are "public records," Kaempe v. Myers, 367 F.3d 958, 965 (D.C. Cir. 2004), which includes records from other court proceedings, Covad Commc'ns Co. v. Bell Atl. Corp., 407 F.3d 1220, 1222 (D.C. Cir. 2005).

6

### III. LEGAL ANALYSIS

**A. Whether Venue is Proper in the District of Columbia**

Several defendants argue that venue is improper in the District of Columbia. See Priority's Mem. at 2; Citi Inc.'s Mem. at 8-10.[4] Under 28 U.S.C. § 1391(b), which generally governs actions brought in federal district courts, a civil action may be brought in any judicial district (1) "in which any defendant resides, if all defendants are residents of the State in which the district is located"; (2) "in which a substantial part of the events or omissions giving rise to the claim occurred, or a substantial part of property that is the subject of the action is situated"; or (3) "if there is no district in which an action may otherwise be brought as provided in this section, any judicial district in which any defendant is subject to the court's personal jurisdiction with respect to such action." 28 U.S.C. § 1391(b)(1)-(3) (2012). As the defendants argue and the plaintiff does not contest, see Priority's Mem. at 5; Citi Inc.'s Mem. at 8-10; Pls.' Priority Opp'n at 5; Pls.' Combined Opp'n at 5, none of the provisions of § 1391(b) authorize venue in this District because: (1) none of the defendants reside in the District of Columbia; (2) all of the acts or omissions giving rise to the plaintiffs' claims took place in California; and (3) there is a judicial district in which venue would be proper under § 1391(b)(2), namely a district in California.

The plaintiffs nonetheless argue that venue is proper in the District of Columbia because of a consent decree entered in United States v. Bank of America, Civ. No. 12-361. See Pls.' Priority Opp'n at 3; Pls.' Combined Opp'n at 3. But defendant Priority Posting and Publishing, Inc. notes that "[t]he [p]laintiffs' [c]omplaint is a near verbatim copy (save only for changes to

---

[4] Most of the defendants joined defendant CitiMortgage, Inc.'s Motion to Dismiss. See generally McCarthy's Mot.; McCarthy's Mem.; Citi LLC's Mot.; Citi LLC's Mem. The Court will therefore refer generally to CitiMortgage, Inc.'s motion and memorandum of law throughout this opinion.

7

party names and addresses) of the [c]omplaint filed by pro se [p]laintiff Vesko Borislavov Ananiev in this Court in December 2012," which "also involv[ed] the foreclosure of a California home [and] was dismissed on September 13, 2013 by Judge Howell of this Court" for improper venue and lack of standing. Priority's Mem. at 2 (citing Ananiev v. Wells Fargo Bank, NA, 968 F. Supp. 2d 123 (D.D.C. 2013)). The Court's review of the plaintiffs' complaint and the complaint in Ananiev confirms that defendant Priority is correct that the two complaints are substantially similar. Compare Compl., with Complaint, Ananiev v. Wells Fargo Bank, NA, Civ. No. 12-1804 (D.D.C., filed Nov. 2, 2012). Accordingly, the Court finds Judge Howell's analysis instructive.

In Ananiev, Judge Howell found that the consent decree[5] entered in United States v. Bank of America, Civ. No. 12-361,

> provides that the "Servicer's obligations under this Consent Judgment shall be enforceable solely in the U.S. District Court for the District of Columbia," but that enforcement actions under the Consent Judgment may only "be brought by any Party to this Consent Judgment or the Monitoring Committee." Unrelated Consent Judgment, Ex. E. at E-14-15. The Unrelated Consent Judgment simply does not create a private right of action allowing third parties, such as the plaintiff, to bring claims for alleged violations of the Judgments, let alone unrelated claims in this jurisdiction. Accord Beckett v. Air Line Pilots Ass'n, 995 F.2d 280, 288 (D.C. Cir. 1993) ("Only the Government can seek enforcement of its consent [judgments] . . . therefore, even if the Government intended its consent [judgment] to benefit a third party, that party could not enforce it unless the [judgment] so provided."); Rafferty v. NYNEX Corp., 60 F.3d 844, 849 (D.C. Cir. 1995) ("Unless a government consent [judgment] stipulates that it may be enforced by a third party beneficiary, only the parties to the [judgment] can seek enforcement of it.").

---

[5] Although Judge Howell addressed the consent decree entered in United States v. Bank of America, Civ. No. 12-361, involving Wells Fargo Bank, NA, that consent decree is identical in relevant part to the consent decree entered in that same case and involving CitiMortgage, Inc. Compare ECF No. 14, United States v. Bank of Am., Civ. No. 12-361 (D.D.C. Apr. 4, 2012) (Wells Fargo Bank, NA consent decree), with ECF No. 12, United States v. Bank of Am., Civ. No. 12-361 (D.D.C. Apr. 4, 2012) (CitiMortgage, Inc. consent decree). Indeed, numerous nearly identical consent decrees were entered in that same case.

968 F. Supp. 2d at 131-32. Here, as in Ananiev, "the plaintiff[s] [were] not . . . part[ies] to the" consent decree entered in United States v. Bank of America, Civ. No. 12-361, "and [are] therefore, . . . third part[ies] without any standing to enforce its terms." Id. at 132. Accordingly, the consent decree is an improper basis for venue in this Court. Because the plaintiffs' complaint does not satisfy the requirements of 28 U.S.C. § 1391(b), and because the consent decree does not provide a basis for venue in this district, the Court finds that the District of Columbia is an improper venue for the plaintiffs' complaint.

### B. Whether Transfer is Appropriate

The Court's venue conclusion does not end the Court's inquiry, however. Under 28 U.S.C. § 1406, a district court which finds that plaintiffs have filed a case in the wrong venue "shall dismiss, or if it be in the interest of justice, transfer such case to any district or division in which it could have been brought." 28 U.S.C. § 1406(a) (2012). The decision whether to transfer or dismiss a case is committed to the discretion of the district court where a suit was improperly filed. Naartex Consulting Corp. v. Watt, 722 F.2d 779, 789 (D.C. Cir. 1983). Although a district court may dismiss a case if the plaintiffs' claims suffer from obvious substantive defects, see Buchanan v. Manley, 145 F.3d 386, 389 n.6 (D.C. Cir. 1998); Naartex Consulting Corp., 722 F.2d at 789, the interest of justice generally favors transferring a case, particularly when a plaintiff is proceeding pro se, James v. Verizon Servs. Corp., 639 F. Supp. 2d 9, 15 (D.D.C. 2009).

The plaintiffs' remaining claims include allegations concerning the alleged foreclosure on their home, violations of the Fair Debt Collection Practices Act, the Rosenthal Act, and 42 U.S.C. §§ 1983, 1985, and 1986, fraud, intentional infliction of emotional distress, and

deprivation of their due process rights. As discussed below, each of these claims suffer serious substantive problems.

### 1. The Plaintiffs' Claims Relating to the Foreclosure on Their Home

Defendant Priority asserts that the plaintiffs have no standing to pursue claims relating to the foreclosure on their home because "they have not suffered an injury in fact because their house has not yet been sold." Priority's Reply at 3.

"Because Article III limits the constitutional role of the federal judiciary to resolving cases and controversies, a showing of standing 'is an essential and unchanging' predicate to any exercise of [federal] jurisdiction." Fla. Audubon Soc'y v. Bentsen, 94 F.3d 658, 663 (D.C. Cir. 1996) (en banc) (citation omitted) (quoting Lujan, 504 U.S. at 560). "[T]o satisfy Article III's standing requirements, . . . [the] plaintiff[s] must show [that] (1) [they have] suffered an 'injury in fact' that is (a) concrete and particularized and (b) actual or imminent, not conjectural or hypothetical; (2) the injury is fairly traceable to the challenged action of the defendant; and (3) it is likely, as opposed to merely speculative, that the injury will be redressed by a favorable decision." Friends of the Earth, Inc. v. Laidlaw Envtl. Servs. (TOC), Inc., 528 U.S. 167, 180-81 (2000) (quoting Lujan, 504 U.S. at 560-61).

Here, contrary to what is suggested in at least some parts of their complaint, the plaintiffs in their opposition to defendant Priority's motion to dismiss state that their "home has not been sold" and "no foreclosure sale was effectuated." Compare, e.g., Compl. ¶ 85 (discussing the alleged invalidity of "[t]he foreclosure actions taken by the [d]efendants"), with Pls.' Priority Opp'n at 2 ("[N]o foreclosure sale was effectuated."). The plaintiffs have conceded that they have suffered no injury in fact, and therefore they have no standing to seek relief from this Court on the basis of the foreclosure on their home.

### 2. The Plaintiffs' Fair Debt Collection Practices Act and Rosenthal Act Claims

The defendants argue that the plaintiffs have failed to state a claim under the Fair Debt Collection Practices Act. See Citi Inc.'s Mem. at 12. "The Fair Debt Collection Practices Act . . . imposes civil liability on debt collector[s] for certain prohibited debt collection practices." Jerman v. Carlisle, 559 U.S. 573, 576 (2010) (citations omitted). Under the Act, "[a] 'debt collector' is any person in any business 'the principal purpose of which is the collection of any debts, or who regularly collects or attempts to collect, directly or indirectly, debts owed or due asserted to be owed or due another.'" Hardy v. N. Leasing Sys., Inc., 953 F. Supp. 2d 150, 159-60 (D.D.C. 2013) (citing 15 U.S.C. § 1692a(6)). "Excluded from the [Act's] coverage is activity that 'concerns a debt obtained by such person as a secured party in a commercial credit transaction involving the creditor.'" Id. (citing 15 U.S.C. § 1692a(6)(F)(iv)). Moreover, "the law is well-settled . . . that creditors, mortgagors, and mortgage servicing companies are not debt collectors and are statutorily exempt from liability under the [Fair Debt Collection Practices Act]." Scott v. Wells Fargo Home Mortg. Inc., 326 F. Supp. 2d 709, 718 (E.D. Va. 2003), aff'd, 67 F. App'x 238, 238 (4th Cir. 2003). Additionally, "[t]he legislative history of section 1692a(6) [of the Fair Debt Collection Practices Act] indicates conclusively that a debt collector does not include the consumer's creditors, a mortgage servicing company, or an assignee of a debt, as long as the debt was not in default at the time it was assigned." Perry v. Steward Title Co., 756 F.2d 1197, 1208 (5th Cir. 1985), modified on other grounds, 761 F.2d 237 (5th Cir. 1985). The Rosenthal Act similarly defines "debt collector," Cal. Civ. Code §§ 1788.2(c), and "foreclosure pursuant to a deed of trust does not constitute debt collection under [that] [Act]," Gardner v. Am. Home Mortg. Servicing, Inc., 691 F. Supp. 2d 1192, 1198 (E.D. Cal. 2010) (citing cases).

11

The plaintiffs' claims of improper debt collection practices all relate to the purported attempt to foreclose on their home in California. These claims, however, are not cognizable under either the Fair Debt Collection Practices Act or the Rosenthal Act, because none of the defendants are "debt collectors" as defined by those Acts. The complaint instead names defendants who are companies and banks servicing the plaintiffs' mortgage, and the documents attached to the plaintiffs' complaint indicate that the assignment of the debts associated with their mortgage were all made prior to the purported attempt to foreclose on their home. Compare Compl., Exs. 2 (Deed of Trust), 3 (Assignment of Deed of Trust), 10 (Substitution of Trustee), with Compl., Ex. 13 (Notice of Default). Moreover, the complaint contains no allegations that the law firm or individuals named as defendants are involved in "any business 'the principal purpose of which is the collection of any debts, or who regularly collects or attempts to collect, directly or indirectly, debts owed or due asserted to be owed or due another.'" Hardy, 953 F. Supp. 2d at 159-60 (citation omitted). The plaintiffs have thus failed to state a claim under either the Fair Debt Collection Practices Act or the Rosenthal Act, and the Court must therefore dismiss both of these claims.

### 3. The Plaintiffs' Additional Fraud Claims

To the extent the plaintiffs intend to assert fraud claims independent from their claims under the Fair Debt Collection Practices Act and the Rosenthal Act, see, e.g., Compl. ¶¶ 68-70, they have failed to state a claim under either the law of California or the District of Columbia. Under California law, "[t]he elements of fraud are (1) misrepresentation, (2) knowledge of falsity, (3) intent to induce reliance on the misrepresentation, (4) justifiable reliance on the misrepresentation, and (5) resulting damages." Cansino v. Bank of Am., 224 Cal. App. 4th 1462, 1469 (2014). The law of the District of Columbia is similar. See Drake v. McNair, 993

A.2d 607, 622 (D.C. 2010) ("At common law, the requisite elements of fraud were (1) a false representation (2) made in reference to a material fact, (3) with knowledge of its falsity, (4) with the intent to deceive, and (5) an action that is taken in reliance upon the representation." (citation and internal quotation marks omitted)). The plaintiffs do not claim that they relied on any of the alleged misrepresentations, and this alone defeats any claim of fraud being asserted by them. Accordingly, they have failed to state a claim for fraud under the law of either jurisdiction.

### 4. The Plaintiffs' Intentional Infliction of Emotional Distress Claims

The defendants argue that the plaintiffs have failed to state a claim for intentional infliction of emotional distress. See Citi Inc.'s Mem. at 15-16. Neither the plaintiffs nor the defendants discuss whether the law of the District of Columbia or California should apply to the plaintiffs' tort claims. However, regardless of which law applies, the outcome is the same. "In order to establish a prima facie case of intentional infliction of emotional distress" under District of Columbia law, "a plaintiff must show (1) extreme and outrageous conduct on the part of the defendants, which (2) intentionally or recklessly (3) causes the plaintiff severe emotional distress." Williams v. District of Columbia, 9 A.3d 484, 493-94 (D.C. 2010) (internal quotation marks omitted). As to the first element, the plaintiff must establish that the defendants' conduct was "so outrageous in character, and so extreme in degree, as to go beyond all possible bounds of decency, and to be regarded as atrocious, and utterly intolerable in a civilized community." Joyner v. Sibley Mem'l Hosp., 826 A.2d 362, 373 (D.C. 2003) (citation omitted). And under California law, claims of intentional infliction of emotional distress are insufficient as a matter of law where the plaintiffs "have not pled any allegations of conduct by the defendants that could be considered 'outrageous.'" Wilson v. Hynek, 207 Cal. App. 4th 999, 1009 (2012). Indeed, "a creditor/debtor situation, whereby the defendants were exercising their rights under the loan

13

agreements" and where "[t]here are no allegations that in conducting the foreclosure proceedings any of the defendants threatened, insulted, abused, or humiliated" the plaintiffs does not rise to the level of intentional infliction of emotional distress.  Id.

Here, the plaintiffs' complaint includes no allegations that any of the defendants, "in conducting the [alleged] foreclosure proceedings . . . threatened, insulted, abused, or humiliated" the plaintiffs.  Id.  And foreclosure proceedings, while undoubtedly unpleasant, are not uncommon and cannot because of the process alone "be regarded as atrocious [or] utterly intolerable in a civilized community."  Joyner, 826 A.2d at 373.  The Court thus finds that the plaintiffs have failed to state a cause of action for intentional infliction of emotional distress.

### 5. The Plaintiffs' Due Process Claims

This Circuit has held that "private citizens, acting in their private capacities, cannot be guilty of violating due process rights," Canadian Transp. Co. v. United States, 663 F.2d 1081, 1093 (D.C. Cir. 1980), and "the same is true with respect to the corresponding procedural due process provision of the California Constitution," Kim v. Orellana, 145 Cal. App. 3d 1024, 1027 (1983).  Here, each of the defendants named in the plaintiffs' complaint is a private actor, and the plaintiffs have not alleged that the defendants were not acting in their private capacities.  The plaintiffs have thus failed to state a claim under the due process provisions of either the United States or California Constitution.

### 6. The Plaintiffs' Claims Under 42 U.S.C. §§ 1983, 1985, and 1986

The defendants argue that the plaintiffs have failed to state a claim under 42 U.S.C. §§ 1983, 1985, or 1986. Citi Inc.'s Mem. at 13-15.  "To state a claim under § 1983, a plaintiff must allege the violation of a right secured by the Constitution and laws of the United States, and must show that the alleged deprivation was committed by a person acting under color of state law."

West v. Atkins, 487 U.S. 42, 48 (1988). As discussed above, none of the defendants are state actors, and the plaintiffs have not alleged that they were acting under color of state law, and have thus failed to state a § 1983 claim.

As to claims under § 1985, the plaintiffs must allege:

(1) a conspiracy; (2) for the purpose of depriving, either directly or indirectly, any person or class of persons of the equal protection of the laws, . . . and (3) an act in furtherance of the conspiracy; (4) whereby a person is either injured in her person or property or deprived of any right or privilege of a citizen of the United States. The statute "does not apply to all conspiratorial tortious interferences with the rights of others, but only those motivated by some class-based, invidiously discriminatory animus."

Martin v. Malhoyt, 830 F.2d 237, 258 (D.C. Cir. 1987) (citations omitted). The plaintiffs here do not allege that any of the defendants actions were "motivated by some class-based, invidiously discriminatory animus," id., and have thus failed to state a claim under § 1985. Moreover, because § 1986 claims are predicated on the existence of § 1985 claims, see Herbin v. Hoeffel, No. 99-7244, 2000 WL 621304, at *1 (D.C. Cir. 2000) ("Because appellant did not state a claim under 42 U.S.C. § 1985(3), there is no basis for relief under 42 U.S.C. § 1986.") (citing Dowsey v. Wilkins, 467 F.2d 1022, 1026 (5th Cir. 1972)), the plaintiffs have also failed to state a § 1986 claim.

### IV. CONCLUSION

As discussed above, the plaintiffs' complaint suffers from numerous substantive deficiencies. Additionally, as also discussed above, the plaintiffs' complaint is substantially similar and in some places identical to the plaintiff's complaint in Ananiev. The Court therefore concludes that transferring this case would not be in the interests of justice, and that dismissal is appropriate. See Ananiev, 968 F. Supp. 2d at 132-34 (dismissing pro se plaintiff's complaint

15

where plaintiff's claims suffered from substantive defects). Accordingly, the Court is compelled to dismiss the plaintiffs' complaint rather than transferring it to a district in California.[6]

**SO ORDERED** this 29th day of May, 2014.

REGGIE B. WALTON<br>United States District Judge

---

[6] An order consistent with this memorandum opinion will be issued contemporaneously.